NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE MEDICINES COMPANY, : | |
| : | Civil Action No. 16-569 (SRC) |
| Plaintiff, : | |
| : | |
| v. : | **OPINION & ORDER** |
| : | |
| EAGLE PHARMACEUTICALS, INC. et al.: | |
| : | |
| Defendants. : | |

**CHESLER, U.S.D.J.**

This matter comes before this Court on the motion for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56, by Defendants Eagle Pharmaceuticals, Inc. ("Eagle"), Scidose LLC, and Therdose Pharma PVT. LTD. (collectively, "Defendants"). For the reasons stated below, the motion will be denied.

This case arises from a dispute between pharmaceutical companies related to a medication, bivalirudin. In brief, the Amended Complaint alleges that the parties entered into an agreement with the goal of developing a ready-to-use ("RTU") formulation of Plaintiff's bivalirudin product, Angiomax®. Two patents issued from the development program, U.S. Patent Nos. 7,713,928 and 7,803,762 (the "Patents at issue.")

Defendants first move for summary judgment on the patent infringement claims, Counts I and II, on the ground that Plaintiff lacks standing to bring these claims. There is no dispute that the parties co-own the two patents at issue, and that the License and Development Agreement ("LDA") § 2.2.1 gave Plaintiff rights to exclusive licenses under these patents. Defendants argue that the LDA has been terminated, and that the exclusive licenses did not survive

termination; therefore, as patent co-owners, neither has the standing to sue the other for patent infringement. The parties agree that the Defendants notified Plaintiff by letter that they were terminating the LDA, and that Plaintiff subsequently acknowledged that the LDA had been terminated. At issue on this motion is the question of whether the exclusive licenses survived the termination.

Defendants' argument involves the following propositions: 1) LDA § 9.4.1 states that Plaintiff's exclusive license would survive termination if Plaintiff were to terminate for cause; 2) LDA § 9.4.2 "specially lists which provisions survive a termination by Eagle for cause" (Defs.' Br. 10) and does not refer to the exclusive license; and 3) LDA § 9.4.4 lists the provisions which survive termination for any cause, and does not list the provision granting Plaintiff the exclusive license. Based on these propositions, Defendants argue that the LDA expressly states the provisions that survive termination, and the exclusive license provision is not listed. Therefore, Defendants contend, it cannot have survived termination of the LDA.

Plaintiff, in opposition, contends that the survival provision, LDA § 9.4.4, does not state that **only** the provisions listed survive termination, and that the parties intended that the exclusive license would survive termination. Furthermore, Plaintiff argues, the LDA does not state that Plaintiff must lose the exclusive license upon Eagle's termination of the LDA.

The result is that each side has made a case that the language of the LDA supports its interpretation of the LDA. Both sides have proposed plausible readings of the contract language. On this record, this Court finds that the language of the LDA does not clearly and unambiguously answer the question of whether the exclusive licenses survived under the particular circumstances of this termination – circumstances which seem quite likely to be the subject of a material factual dispute.

In Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co., 180 F.3d 518, 521-522 (3d Cir. 1999), the Third Circuit addressed the question of how a nonmovant may defeat a motion for summary judgment on a matter of contract interpretation: "The question on appeal, therefore, is whether Diamond has provided a reasonable alternative reading of the contract under which the defendants would not be entitled to judgment as a matter of law." Thus, here, the question is whether Plaintiff has provided a reasonable alternative reading of the contract under which the Defendants would not be entitled to judgment as a matter of law. This Court finds that Plaintiff has done so, thereby defeating Defendants' motion for summary judgment.

Furthermore, in Diamond, the Third Circuit held: "When interpreting a contract, a court may consider extrinsic evidence of surrounding circumstances to ascertain the intended meaning of the parties." Id. at 522. The present record has not yet been developed sufficiently to permit this Court to conduct this inquiry. Discovery must be allowed so that the parties may look for such evidence. The parties should have the opportunity for discovery, and it may then be possible to decide this question of contract interpretation on summary judgment.

Similarly, in Emerson Radio Corp. v. Orion Sales, Inc., 253 F.3d 159, 164 (3d Cir. 2001), the Third Circuit held: "The determination whether a contract term is ambiguous is a question of law that requires a court to hear the proffer of the parties and determine if there are objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings." Thus, under Emerson, this Court conducts an inquiry into the question of a contract's ambiguity itself by hearing the parties proffer evidence that may demonstrate the possibility of different interpretations.

This perspective has its foundation in the Third Circuit's decision in Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980). In Mellon, the Third Circuit

held:

> It is the role of the judge to consider the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning. The trial judge must then determine if a full evidentiary hearing is warranted. If a reasonable alternative interpretation is suggested, even though it may be alien to the judge's linguistic experience, objective evidence in support of that interpretation should be considered by the fact finder.

(Id.) Mellon makes clear how this contract interpretation inquiry must proceed: after discovery, this Court will consider the evidence, including extrinsic evidence, offered in support of the differing interpretations.[1] At that point, the Court can determine whether there is more than one reasonable alternative interpretation of the LDA, as well as whether objective evidence should be considered.

Defendants also move for summary judgment on Counts I through IV on the ground that, having materially breached the LDA, Plaintiff cannot now enforce the LDA's terms. Defendants contend that the arbitration panel determined that Plaintiff materially breached the LDA, and that this determination has collateral estoppel effect. This argument fails because the express language of the award does not support it. Section VI of the award states, in relevant part:

**VI.    FINAL AWARD OF ARBITRATORS**

The Panel finds and determines as to the issues submitted for arbitration, as more specifically set forth above:

A.   MDCO has breached section 3.2.2(a) of the LDA.
B.   MDCO has not breached section 3.2.2(b) of the LDA.
C.   MDCO has not breached section 3.2.2(c) of the LDA.
D.   MDCO has breached the implied obligation in the LDA to act in good faith and deal fairly with Eagle.

---

[1] It is worth noting that, in Mellon, the Third Circuit explained its rejection of a strict "four corners" approach to contract interpretation, stating that a judge who does not hear extrinsic evidence of meaning might never "realize an ambiguity can exist." Id. at 1011 n.12.

(Melvin Dec. Ex. 1 at 36.)  There is nothing here to indicate that the arbitrators considered or determined any questions of whether any breaches were material breaches.  And, if this is not clear enough, in Section II, the decision clearly sets forth the five issues to be determined in the arbitration.  (Melvin Dec. Ex. 1 at 4.)  All five statements of the issues for determination refer only to questions of breach; the word "material" is never used, nor does any synonym appear.

Thus, Defendants' assertion that the arbitrators determined that Plaintiff materially breached the LDA is not supported by the record.  As to this argument, the movant has failed to demonstrate that it is entitled to judgment as a matter of law, and the motion for summary judgment will be denied.

Because this Court has decided the motion for partial summary judgment without considering Plaintiff's Rule 56(d) affidavit, Defendants' motion to strike that affidavit will be denied as moot.

For these reasons,

**IT IS** on this 15th day of March, 2017

**ORDERED** that Defendants' motion for partial summary judgment (Docket Entry No. 130) is **DENIED**; and it is further

**ORDERED** that Defendants' motion to strike Plaintiff's Rule 56(d) affidavit (Docket Entry No. 155) is **DENIED** as moot.

    s/ Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.